UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                     Chapter 11

SEAVIEW PLACE DEVELOPERS, INC.

                                     Case No: 8:11-bk-5126-KRM

             Debtor.

_____/

**DEBTOR'S EMERGENCY MOTION FOR**
**AUTHORITY TO OBTAIN POST-PETITION FINANCING**
**(Emergency Hearing Requested)**

---

**<u>SUMMARY OF RELIEF REQUESTED</u>**

The Debtor seeks authority to borrow from a related entity $50,000.00 on an emergency interim basis, and borrow a cumulative amount of up to $300,000.00 following final court approval. These amounts are needed to fund ordinary operating expenses of its condominium project and costs of administration in this Chapter 11 case, all in accordance with the proposed budget attached hereto. This Motion requests the amounts loaned hereunder be granted "super-priority" administrative expense status as described herein, and also be secured by certain liens in the Debtor's assets. The proposed liens would be senior liens on all of the Debtor's unencumbered property, and junior liens on all of the Debtor's property already encumbered by existing, valid, and unavoidable liens. The Motion seeks to have the liens granted in connection with any financing approved by this Court to be deemed valid and perfected without the need for any further filings or action by any party.

---

Seaview Place Developers, Inc. ("<u>Debtor</u>"), by proposed counsel and pursuant to

11 U.S.C. §364 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001(c)

and this Court's Administrative Order FLMB-2009-1, hereby moves this Court for the

entry of preliminary and final orders authorizing the Debtor to ultimately borrow up to

Three Hundred Thousand Dollars ($300,000.00) through a secured line of credit as

described below (the "<u>DIP Loan</u>") from Gulf Landings Loan, LLC (the "<u>DIP Lender</u>").

The DIP Loan shall be used to fund certain monthly operational expenses that are

projected to occur during the pendency of the Debtor's bankruptcy case. As grounds in

support, the Debtor states:

**Jurisdiction and Venue**

1.      The Debtor filed a Voluntary Petition for Relief under chapter 11 of the Bankruptcy Code on March 22, 2011 (the "Petition Date").

2.      The Debtor is continuing in possession of its property and operating and managing its business as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      No trustee or examiner has been appointed in this case and no official committee has been appointed pursuant to Section 1102 of the Bankruptcy Code.

4.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).

**Relief Requested**

**A.      Background**

5.      Seaview, a Florida corporation founded in 2005, developed, built, owns, and now manages a nine-story, waterfront high-rise condominium (the "Seaview Building") in Pasco County, Florida.  The Seaview Building contains a total of 151 separately parceled condominium units, which range in size from an 830 square foot one-bedroom unit, to a 1,910 square foot three-bedroom unit.  Amenities to the Seaview Building include a lobby area, clubroom, fitness center, swimming pool and spa, sauna, aerobics, private garages, business center/library, water frontage, asphalt paved drives and parking, a "green area," and a nearby 45-slip marina (collectively, the "Seaview Project").  Approximately 31 of the units in the Seaview Building are occupied by residents.

6.     The Seaview Building was constructed between 2006 and 2008 and was funded, in part, by a construction loan from Colonial Bank ("Colonial") in the original amount of approximately $22 Million (the "Loan").[1]  The Loan appears to be secured by a lien on the Seaview Building and related assets, and is also purportedly guaranteed by certain of the Debtor's affiliates and the Debtor's principals, Joseph and Marlene Borda (collectively, the "Principals").

7.     Apparently, sometime in 2009, Branch Banking & Trust Company, as successor-in-interest to Colonial ("BB&T" or "Lender"), acquired the Loan (along with other loans to the Debtor's affiliates) as part of BB&T's acquisition of Colonial's assets through the FDIC's receivership of Colonial.

8.     Historically, the necessary operating and maintenance expenses for the Seaview Project (the "O&M Expenses"), as well as some of the debt service on the Loan, have been paid from a considerable expense reserve account that had been created through certain amendments to the Loan (the "Reserve Account").  At various times (most recently in early 2011), the Lender has refused to allow the Reserve Account to be used to pay the O&M Expenses.  Accordingly, at those times, certain of the Debtor's affiliates have been forced to periodically provide loans to the Debtor in order to maintain the Seaview Building and preserve the value of the Seaview Project.  These loans from the Debtor's affiliates now total approximately $4,000,000 and have been used to pay the O&M Expenses, debt service to BB&T, and for development and construction of the

---

[1] Colonial also provided additional loans totaling roughly $6.64 Million to certain affiliates of the Debtor in connection with the acquisition and development of real property adjacent to the Seaview Project.  These various loans are purportedly cross-collateralized and cross-defaulted, and secured by the respective real estate.  The Debtor believes that these loans are, at a minimum, each fully secured by the value of the subject collateral.

various amenities benefiting the Seaview Project and adjacent parcels, such as boat docks.

9. In light of BB&T's actions and the filing of this bankruptcy case, the Debtor's affiliates are unable and unwilling to continue loaning money to the Debtor to pay for the O&M Expenses and debt service to BB&T.

10. BB&T has recently threatened to pursue its remedies (presumably foreclosure of the Seaview Building and pursuit of the Debtor's Principals and affiliates on certain guaranties). As such, the Debtor had little choice but to seek protection under chapter 11 of the Bankruptcy Code.

11. Based on an April 2010 appraisal commissioned by BB&T, the Seaview Building has a discounted sellout (i.e., "bulk sale") value of $23,750,000, and the docks owned by Seaview additionally have a "discounted sellout value" of another $1,000,000. Therefore, based in part on BB&T's own appraisals, the Debtor believes there is significant equity in its assets.

**B.      Necessity of the DIP Loan**

12. The Debtor will require funding primarily for the post-petition O&M Expenses needed to maintain and preserve the Seaview Project to the extent other sources of revenue, such as monthly rent and maintenance fees of occupants, prove insufficient. Specifically, the Debtor requires funding during the Chapter 11 case for the following purposes:

(a)      ordinary operating expenses, including the Debtor's condominium association obligations;

(b)     payroll and related expenses;

(c)     payment of payroll taxes and insurance;

(d)     payment of professionals, UST Fees, and other Chapter 11 administrative expenses;

(e)     other necessary expenses related to maintaining and preserving the value Seaview Building and its amenities; and/or

(f)     similar reasonable and necessary post-confirmation expenses.

13.     Based on current projections, the Debtor anticipates that it will require up to Fifty Thousand Dollars ($50,000.00) each month to fund its operations. The Debtor has prepared a Budget attached as **Exhibit "A"** reflecting the Debtor's anticipated average monthly cash needs (the "Budget").

14.     As such, the Debtor estimates it will require approximately Fifty Thousand Dollars ($50,000.00) of the funds within the first thirty (30) days of this Bankruptcy Case in order to fund its post-petition expenses on an interim basis.

15.     If the Debtor is not allowed to borrow the funds, the Debtor will suffer immediate and irreparable harm. Specifically, in that instance, the Debtor would be unable to procure the goods and services required to maintain and operate the Seaview Project and its amenities, thereby diminishing the value of the Seaview Project to the detriment of its creditors and other stakeholders. Moreover, without funds to maintain the Seaview Building and amenities, and pay for utility services and other operating costs, the welfare of the occupants of the Seaview Building will be threatened, which could develop into a public safety concern.

C. **Identity of Proposed DIP Lender**

16.     The DIP Lender is a newly formed Florida limited liability company that is related to the Debtor.  Although arguably not an "affiliate" or "insider" of the Debtor (as those terms are defined in the Bankruptcy Code), the Lender is essentially indirectly owned and controlled by the Principals.  The DIP Lender shall be capitalized primarily through deposits of proceeds borrowed against Joseph Borda's "universal life" policy with Prudential Financial, Inc. (the "Life Insurance Policy").[2]  Correspondence evidencing the funding source of the DIP Lender is attached as **Exhibit "B."**  As revealed by that correspondence there are material costs associated with the Principals' borrowing against the Life Insurance Policy (primarily in the form of interest and other fees) that must ultimately be repaid to the Life Insurance Policy (in addition to the principal amount borrowed).

D. **Terms of the DIP Loan**

17.     The terms and conditions of the DIP Loan shall be memorialized by a commitment letter similar to that attached as **Exhibit "C"** (the **"DIP Loan Commitment"**) and such other loan documents as the Lender may reasonably require.  The material provisions governing the proposed DIP Loan are as follows to the Debtor:

> (i)     ***Amount of DIP Loan -*** The DIP Loan shall be structured as a line of credit and shall be in the maximum outstanding amount of **Three Hundred Thousand Dollars ($300,000.00)**.  Proceeds of the DIP Loan shall be advanced to the Debtor as follows: (i) upon this Court's entry of an Interim Order authorizing the DIP Loan and the DIP Lender's approval, the DIP Lender will make available one or more initial installments of an initial advance, up to a total **Fifty Thousand Dollars ($50,000.00)** (the

---

[2] On prior occasions, the Principals and affiliates have similarly funded loans to the Debtor's operations through borrowing against the Life Insurance Policy, albeit not through the recently created DIP Lender.

"Interim Advance") to the extent needed for the payment of its reasonable and necessary operations for the first month following the Petition Date, in accordance with the Budget, and thereafter (ii) upon the Court's final approval of the Motion, the Borrower's request(s) and the Lender's consent in each such instance, the Lender may make one or more subsequent advances of the balance of the DIP Loan to the Debtor (each a "Subsequent Advance") for the purposes described in the Budget. To the extent any portion of the outstanding amount of the DIP Loan is repaid during the term of the DIP Loan, such amounts can be re-advanced to the Debtor subject to the terms of this Motion up to the maximum authorized amount of the DIP Loan. Reasonable Fees and Expenses of the DIP Lender incurred in connection with making the DIP Loan (as described below) shall be considered part of the principal amount of the DIP Loan.

(ii) **_Interest Rate_ -** The rate of interest shall be at **six percent (6%) per annum,** which shall accrue on the outstanding balance of the DIP Loan from the date of each advance until all outstanding amounts are repaid in full.

(iii) **_Term and Termination_** - The term of the DIP Loan shall be for **six (6) months** from the date of the Interim Advance (the "Term") (unless sooner terminated and/or replaced with substitute funding upon confirmation of the Plan or otherwise, extended by written agreement of the parties, or upon the occurrence of an Event of Default, as defined below). The Debtor may (but is not required to) repay the principal, interest, and other amounts due under the DIP Loan at any time prior to the end of the Term without penalty. At the end of the Term, all amounts then outstanding under the DIP Loan will be paid immediately through (1) a payment of the outstanding balance of the Loan in cash, (2) the conveyance to the DIP Lender of condominium units and/or related amenities of the Seaview Project, free and clear of all encumbrances, having a value (as determined by consent of the parties or the Bankruptcy Court) equal to the then outstanding balance of the DIP Loan, or (3) as the Debtor and DIP Lender may otherwise agree, in writing.

(iv) **_Events of Default_** – The Debtor's failure to fully and timely pay all amounts due under the DIP Loan at the expiration of the Term (a "Payment Default"), the dismissal or conversion of the bankruptcy case, the appointment of a Chapter 11 trustee or examiner, and/or the granting of relief from the automatic stay shall each constitute an "Event of Default," upon which the full outstanding balance of the DIP Loan shall be immediately due and payable. Other events and conditions of default are set forth in the attached DIP Loan Commitment. In the event of a Payment Default only, the Lender shall provide the Debtor with a written

notice of such Payment Default for failure to fully and timely make payments due under the DIP Loan, and the Debtor shall have three (3) business days therefrom to cure such Payment Default. If an Event of Default occurs (and, in the event a Payment Default is not timely cured after Notice to the Debtor as described above), then all amounts due under the DIP Loan shall become immediately due and payable without further notice or action by the DIP Lender and/or Debtor.

(v) **_Liens_** - The amounts due and the Debtor's obligations to the DIP Lender under the terms of the DIP Loan shall be secured by a valid and perfected first lien on all unencumbered assets of the Debtor, and a valid and perfected junior lien on all assets of the Debtor already encumbered by valid, perfected, and unavoidable pre-petition liens pursuant to 11 U.S.C. § 364 (c)(2) and (3).

(vi) **_Administrative Expense Status_** – As further assurance of repayment, the Debtor's obligations under the terms of the DIP Loan shall be afforded "super-priority" administrative expense status in the Debtor's chapter 11 case as provided in 11 U.S.C. § 364(c)(1), with priority over any and all other administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507 (b).

(vii) **_Carve-Out_** – A "carve-out" from the requested liens and administrative expense claims is contemplated such that amounts due to the DIP Lender under the the DIP Loan are subordinate to the fees and costs of the Debtor's Chapter 11 bankruptcy counsel, and U.S. Trustee Fees owned by the Debtor. Any such amounts paid from proceeds of the DIP Loan shall not be subject to disgorgement in favor of the DIP Lender.

18. The terms of the proposed DIP Loan may, but need not be, memorialized by further or additional documents, as the Lender may reasonably request. The Debtor requests that the liens contemplated above be immediately effective upon the making of the Interim Advance and each Subsequent Advance, without the need for further action, filing, or recording of any instrument by any party. Likewise, the Debtor requests allowance of the requested administrative expense status for all amounts under the DIP Loan without further documentation, application, or other acts by the Debtor, DIP Lender, or Bankruptcy Court.

## Basis for Relief

19.     The compelling circumstances set forth above warrant the approval of the DIP Loan as proposed by this Motion under Section 364 of the Bankruptcy Code and Fed.R.Bankr.P. 4001.

20.     The Debtor is presently unable to obtain, on a post-petition basis, (i) unsecured credit, (ii) credit simply deemed an allowable administrative expense or, (iii) credit on any basis other than that described in this Motion.  As such, the assurances of repayment under the DIP Loan as requested in this Motion are justified pursuant to Section 364(c)(1), (2), and (3).

21.     The DIP Lender is unwilling to advance the DIP Loan without the protections summarized above, especially in light of the DIP Lender's obligations to ensure that it can recover funds sufficient to ultimately repay amounts borrowed against the Life Insurance Policy, plus the costs associated therewith.

22.     The Debtor has contacted various third party lenders in unsuccessful attempts to procure similar post-petition financing on more favorable terms.  In light of the circumstances, including the current economic climate, the Debtor does not believe any other lenders are willing to make a post-petition loan to the Debtor on terms more favorable than those of the DIP Loan.

23.     The Debtor submits that the terms and conditions of the DIP Loan (which are largely necessitated by the terms of the loan from Life Insurance Policy) are fair and reasonable, necessary to the Debtor's reorganization efforts, are being extended in good faith, and are supported by reasonably equivalent value.  As such, the Debtor requests

that the Court find that any credit extended under the DIP Loan is entitled to the protections of Section 364(e) of the Bankruptcy Code.

24.     Good cause has been shown for the entry of an order granting this Motion pursuant to Bankruptcy Rule 4001(c).  In particular, entry of the order is in the best interest of the Debtor's estate, its creditors and stakeholders, and necessary to its ability to continue to operate as a going concern and to reorganize.

**Basis and Necessity for Emergency Relief**

25.     The Debtor requests a preliminary hearing (the "Preliminary Hearing") on this Motion as soon as possible following the filing of the Motion to consider the entry of an order authorizing the interim advance substantially similar to the form of order attached as **Exhibit "D."**  The Debtor requires immediate funding of the Interim Advance to pay anticipated post-petition operational expenses and preserve its ability to continue post-petition operations for the immediate future.  Without immediate authorization to incur the Interim Advance, the Debtor will not be able to meet all of these post-petition operating obligations nor maintain the assets of the Debtor.  In addition to the harm to the Debtor's estate, without funding the necessary costs of the Debtor's operations, the current residents of the Seaview Building would also suffer, potentially creating a public health concern.  The Interim Advance shall be used to the extent needed through the date of any such Final Hearing, all in accordance with the Budget.  As such, immediate approval of the Interim Advance is needed to avoid the aforementioned immediate and irreparable harm to the Debtor, its estate, and its creditors.

26.     The Debtor suggests that at the Preliminary Hearing, the Court also schedule a subsequent final hearing to consider authorizing the Debtor to incur up to the balance of the DIP Loan pursuant to this Motion (the "<u>Final Hearing</u>").  Any such Final Hearing should be set at least fourteen days after the Petition Date to allow adequate notice and due process to all affected parties pursuant to <u>Fed.R.Bankr.P.</u> 4001(c).  After the Final Hearing, if this Court enters a final order approving the DIP Loan in accordance with the terms set forth in this Motion, the DIP Lender will make the Subsequent Advances to the Debtor on an "as needed" basis for the purposes described herein, and pursuant to the terms and conditions described in the DIP Loan Commitment.

**WHEREFORE**, the Debtor respectfully requests that this Court: (a) schedule a Preliminary Hearing on an emergency basis to consider this Motion and thereupon enter an order authorizing Interim Advance as set forth in this Motion, (b) schedule a Final Hearing at the first available opportunity (after providing adequate and timely notice to all parties in interest) to consider this Motion and the entry of an order authorizing the

subsequent advances on the DIP Loan, subject to the terms and conditions set forth in this

Motion, and (c) for such other and further relief as is just and equitable.

DATED this 23rd day of March 2011.

Respectfully submitted,

/s/ Chad S. Bowen
Chad S. Bowen
Florida Bar No. 0138290
Suzy Tate
Florida Bar No. 22071
**Jennis & Bowen, P.L.**
400 North Ashley Drive, Suite 2540
Tampa, FL 33602.
Telephone: (813) 229-1700
Facsimile: (813) 229-1707 (fax)
E-mail: cbowen@jennisbowen.com
E-mail: state@jennisbowen.com
Counsel for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF electronic service to the **United States Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; **Keith Fendrick**, Holland & Knight, 100 N. Tampa Street, Suite 4100, Tampa, FL 33602; **BB&T, Attn: Robert E. Greene, President,** 200 West 2nd Street, Winston-Salem, NC 27101; to those parties on the attached **L.B.R. 1007-2 Parties in Interest List**; and to those parties receiving electronic notices via CM/ECF, on this 23rd day of March 2011.

/s/ Chad S. Bowen
Chad S. Bowen

Label Matrix for local noticing
113A-8
Case 8:11-bk-05126-KRM
Middle District of Florida
Tampa
Wed Mar 23 13:31:38 EDT 2011

A Little Off the Top
5737 Rowan Road
New Port Richey, FL 34653-4549

A.S.K. Janitorial
Professionals, Inc.
4116 Lamson Avenue
Spring Hill, FL 34608-3744

Adair Executive Services,Inc
9015 Ruger Drive
New Port Richey, FL 34655-1218

Bernie J. Egan, Jr., CPA
6 White Horse Pike
Haddon Heights, NJ 08035-1246

Chad S Bowen
Jennis & Bowen, P.L.
400 N Ashley Drive, Suite 2540
Tampa, FL 33602-4317

Branch Banking and Trust
400 N. Tampa Street
Suite 2300
Tampa, FL 33602-4708

Branch Banking and Trust Co.
5130 Parkway Plaza Boulevard
Charlotte, NC 28217-1964

Bright House Networks
PO Box 30765
Tampa, FL 33630-3765

Charles Buono
10 Inverness Drive
Medford, NJ 08055-4030

City of Clearwater
PO Box 30020
Tampa, FL 33630-3020

Dart Electronics
PO Box 40696
Saint Petersburg, FL 33743-0696

Delta Fire Sprinklers
111 Tech Drive
Sanford, FL 32771-6626

Department of Labor and Security
Hartman Building Suite 307
2012 Capital Circle Southeast
Tallahassee FL 32399 0648

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Fidelity and Deposit Company
1400 American Lane
Schaumburg, IL 60196-5452

First Insurance Funding
PO Box 66468
Chicago, IL 60666-0468

Gilbert & Byrd Masonry, Inc.
6346 118th Avenue North
Largo, FL 33773-3720

Gulf Contractors, Inc.
708 E. Tarpon Avenue #2
Tarpon Springs, FL 34689-4250

Gulf Landings Development
Corporation
1170 Gulf  Boulevard #201
Clearwater Beach, FL 33767-2780

Happy Pool
12704 Lacey Drive
New Port Richey, FL 34654-4814

Harbor Colony Development
Inc.
1170 Gulf Boulevard #201
Clearwater Beach, FL 33767-2780

Home  Depot
PO Box 9055
Des Moines, IA 50368

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

J&M Development Concepts LLC
1170 Gulf Boulevard
Unit 201-W
Clearwater Beach, FL 33767-2780

Jack Stiverson
4516 Seagull Drive
New Port Richey, FL 34652-2097

Jacob David Varn, Esquire
Fowler White Boggs PA
101 N. Monroe Street
Suite 1090
Tallahassee, FL 32301-1570

David S. Jennis
Jennis & Bowen, P.L.
400 N Ashley Drive, Suite 2540
Tampa, FL 33602-4317

Joe Borda
1170 Gulf Boulevard #201
Clearwater Beach, FL 33767-2780

Joseph & Marlene Borda
1170 Gulf Boulevard
New Port Richey, FL 34652

```
Kathy Hines                        Keith Fendrick, Esquire          M.Wolf & A. Quintan
4516 Seagull Drive                 Holland & Knight                 1504 Bay Road, #825
New Port Richey, FL 34652-2097     100 N. Tampa Street              Miami Beach, FL 33139-3271
                                   Suite 4100
                                   Tampa, FL 33602-3644


Marlene Borda                      K. Rodney May                    Otis Elevator Company
1170 Gulf Boulevard                Tampa                            One Farm Springs
Suite 201                                                           Farmington, CT 06032-2572
Clearwater Beach, FL 33767-2780


Pasco County Tax Collector         Paul Katona                      Progress Energy Florida, Inc
Mike Olson                         4516 Seagull Drive               PO Box 33199
P.O. Box 276                       New Port Richey, FL 34652-2097   Saint Petersburg, FL 33733-8199
Dade City, FL 33526-0276


Seaside Sanitation                 Seaview Place Developers, Inc.   Seaview Sunsets, LLC
PO Box 9001099                     1170 Gulf Boulevard #201         PO Box 2074
Louisville, KY 40290-1099          Clearwater Beach, FL 33767-2780  Palm Harbor, FL 34682-2074


Shane Edrington                    St. Petersburg Times             USAA
9374 E. Sharon Drive               PO Box 112                       10750 McDermott Highway
Scottsdale, AZ 85260-7426          Saint Petersburg, FL 33731-0112  San Antonio, TX 78288-1600


United States Trustee - TPA        Verizon                          Verizon
Timberlake Annex, Suite 1200       Bankruptcy Administration        P.O. Box 920041
501 E Polk Street                  404 Brock Drive                  Dallas, TX 75392-0041
Tampa, FL 33602-3949               Bloomington, IL 61701-2654


Victor William Holcomb, Esq.       Wilmar
Holcomb & Associates               200 E. Park Drive, Suite 200
3203 W. Cypress Street             Mount Laurel, NJ 08054-1259
Tampa, FL 33607-5109
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Gulf Landings Development       (d)Harbor Colony Development,    End of Label Matrix
Corporation                        Inc.                             Mailable recipients    49
1170 Gulf Boulevard #201           1170 Gulf Boulevard #201         Bypassed recipients     2
Clearwater Beach, FL 33767-2780    Clearwater Beach, FL 33767-2780  Total                  51
```

**Sales and Operating Expenses**

Sales Expenses

| | | |
|---|---|---|
| Employee Salaries | $ | 4,950 |
| Advertising and Promotion | | 4,400 |
| **Total Sales Expenses** | | **9,350** |

Operating Expenses

| | |
|---|---|
| Utilities: | |
| Electrical | 4,700 |
| Water and Sewage | 1,550 |
| Solid Waste | 1,042 |
| Gas | 890 |
| Trash | 130 |
| Alarms | 100 |
| Pool | 250 |
| Landscaping | 1,300 |
| Telephone / Fax | 285 |
| Janitorial | 695 |
| Cable Television | 5,040 |
| Elevators | 1,965 |
| Insurance | 7,745 |
| Supplies / Repairs / Maintenance | 3,615 |
| Appliances | 1,355 |
| Real Estate Taxes | - |
| Security | 1,950 |
| Accounting / Legal | 1,350 |
| Automobile / Gas / Office | 200 |
| **Total Operating Expenses** | **34,162** |
| **Total Sales and Operating Expenses** | **43,512** |

# EXHIBIT "B"

 **Prudential**

**Customer Service Office**
PO Box 7390
Philadelphia, PA 19176
(800) 944-8786
www.prudential.com

JOSEPH R BORDA
1170 GULF BLVD
201W
CLEARWATER FL 33767

| | |
|---|---|
| Policyowner: | Joseph R Borda |
| Insured: | Joseph R Borda |

Policy Number:

March 2, 2011

Dear Joseph R Borda:

As you requested, a loan from your PruLife UL Plus insurance policy was processed on March 1, 2011. You will receive a check for $75,000.00 under separate cover. Your total policy debt is now $428,807.79.

The following interest rate will be charged on your outstanding loan amount:

| Loan Amount | $425,000.00 | Loan Interest Rate | 4.00% |
|---|---|---|---|

The amount of your loan is secured by an equal amount in your Contract Fund, which is credited monthly at an effective annual rate of return of 3.00%. Loan interest is billed once a year and is due on your policy anniversary.

The No-Lapse Guarantee provision will not protect your policy from default while you have an outstanding loan. This is true even if you pay your policy's premiums when due (even if the amount of accumulated premiums you have paid, less any accumulated withdrawals you have taken, is greater than or equal to the No-Lapse Guarantee Value shown in your policy). If the loan is repaid in full, including all loan interest due, and you meet all of the requirements for the guarantee provision, then your policy will be protected from default.

Your policy is a modified endowment contract (MEC). This loan as well as any future loans or withdrawals will be paid out of the policy by distributing gain first. Any gain will be reported to you and the Internal Revenue Service on Form 1099-R. An additional IRS tax penalty may also apply.

We have presented this information based on our understanding of tax law. You may wish to consult your tax adviser, as neither Prudential nor its representatives can offer tax advice.

For more information on loans, please refer to your policy.

Please contact your representative, or us, if you wish to obtain a current policy illustration.



# Gulf Landings Loans, LLC,
## a Florida limited liability company

March __, 2011

**Re:**          *In re Seaview Place Developers, Inc.,*
                **Case No. 8:11-bk-5126-KRM – Middle District of Florida**
                **Financing for a Chapter 11 Debtor-In-Possession**
                **Loan in the maximum principal amount of $300,000.00**

        In connection with the referenced matter, Gulf Landings Loan, LLC is pleased to provide this non-assignable commitment (the "Commitment") to Seaview Place Developers, Inc. (the "Debtor" or "Borrower"), for a post-petition debtor-in-possession loan upon the provisions and conditions described below (the "Loan"):

**LENDER:**          The lender is Gulf Landings Loan, LLC, a Florida Limited Liability Company, and/or its participants and assigns ("Lender").

**BORROWER:**          The borrower is Seaview Place Developers, Inc. as a Debtor-in-Possession (the "Borrower") in the referenced chapter 11 proceeding (the "Case") filed and currently pending in the United States Bankruptcy Court in the Middle District of Florida, Tampa Division (the "Bankruptcy Court"). None of the Borrower's affiliated non-debtor entities are parties to this Agreement and shall not be authorized to use the proceeds of the Loan.

**AMOUNT OF LOAN/**
**ADVANCES:**          The maximum aggregate principal amount of the Loan shall be a line of credit in the amount of **Three Hundred Thousand Dollars ($300,000.00 U.S.D.)**, exclusive of accrued interest, but inclusive of Fees (defined below) and Expenses (also defined below) (the "Maximum Loan Amount"). The Lender is willing to lend to the Borrower the Maximum Loan Amount as follows:

        A.      As conditions precedent to the Lender's obligations to make the Loan described herein, (1) the Debtor shall have provided the Lender a fully executed copy of this Commitment by a duly authorized representative, and (2) the Bankruptcy Court shall have entered an Order satisfactory to the Lender and approving all of the terms of this Commitment, for which the time to appeal, petition for *certiorari,* or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari,* or other proceedings for reargument or rehearing is then pending, (the "Final Order"). Thereafter, upon satisfaction of the

other conditions and requirements of this Commitment (and/or of the Loan Documents as required by the Lender and executed by the Borrower, if any), the Lender will make the Loan up to the Maximum Loan Amount to the Borrower.

B.      The Lender shall begin providing the Borrower with one or more initial advances of up to a total of **Fifty Thousand Dollars ($50,000.00)** for the Borrower's operations for a one-month period following the Petition Date (the "<u>Initial Advance</u>").  The Lender shall make the first installment of the Initial Advance within three business days after the *last* of the following occurs (1) the entry of a Final Order, and (2) the Lender's receipt from Borrower of an acceptable documentation of the Loan.

C.      Following the Initial Advance, and subject to the limitations below, the Lender shall make one or more subsequent advances under the Loan (each a "<u>Subsequent Advance</u>") within five (5) business days after the date the Lender *actually receives* from the Borrower a written request for such advance (each an "<u>Advance Request</u>").  Each Advance Request shall (i) be in writing, (ii) state the amount of the Loan advance the Borrower seeks at that time, (iii) provide an accounting of how the Borrower shall use the proceeds, and (iv) restate the Borrower's accounting of the total amount of the indebtedness due under the Loan as of the date of the request.  Notwithstanding the foregoing, the Borrower shall not be entitled to make an Advance Request any more often than once every fifteen (15) days (unless the Lender otherwise agrees in writing).  Moreover, each Advance Request shall be for (i) no less than **Two Thousand Dollars ($2,000.00),** and (ii) no more than **Fifty Thousand Dollars ($50,000.00).**  At any time during the term of this Loan, the Lender in its sole and absolute discretion, shall have the right to refuse to make all or any part of a Subsequent Advance requested through an Advance Request by providing the Borrower with notice of its decision not to make such advance(s) within three (3) business days after the date it *actually receives* the Advance Request.  By advancing all or some of the Loan proceeds pursuant to an Advance Request, the Lender shall not be estopped nor be deemed to waive its right (i) to deny funding for all or some portion of any future Subsequent Advances requested through an Advance Request from the Borrower, or (ii) to enforce its rights hereunder in connection with previous advances.  In no event shall the Lender be required to advance more than the Maximum Loan Amount.

In addition to the funds advanced as part of the Maximum Loan Amount, Lender may make advances under the Loan, to pay Lender's reasonable costs and expenses both in connection with closing of each advance of the Loan, in connection with the Case (in each case including, but not limited to, fees and costs of the Lender's counsel), and costs reasonably necessary

to preserve the value of Collateral (as described below), which advances shall become part of the principal amount of the Loan.

**TERM:** The term of this Loan shall commence on the date of the Initial Advance hereunder (the "Effective Date"), and shall continue until the earlier of (1) the occurrence of an Event of Default (defined below) under the Loan, (2) the full repayment of the Loan, or (3) the maturity date of the Loan, which shall be that date which is six (6) months from the date the Initial Advance is provided to the Borrower (the "Term").

**BUDGET/USE OF PROCEEDS:** Loan proceeds shall be advanced by the Lender and used by Borrower only in strict compliance with the Loan budget attached hereto as **Exhibit "A"** and incorporated herein by reference (the "Budget"), unless some other use or variance is specifically authorized by the Lender, in writing. The Loan is intended to solely fund the Borrower's operational expenses needed to operate the condominium building and amenities owned by the Borrower for a period of up to 180 days following the Petition Date. The Borrower represent, warrants, and specifically agrees that (1) the compensation to the Debtor's officers, employees and other personal as set forth in the Budget does not exceed the level of such compensation for that respective position that was paid immediately prior to the Petition Date, (2) none of the proceeds of the Loan shall be used for payment of its pre-petition claims or administrative claims (other than those specifically approved by the Bankruptcy Court and incurred in the ordinary course of the Debtor's business), absent specific written authorization of the Lender.

To the extent the Borrower does not fully use any given advance of the Loan in strict accordance with the Budget, those proceeds shall be held in constructive trust by the Borrower in favor of the Lender, and shall additionally be subject to a first priority senior lien of the Lender.

**INTEREST:** A. Interest shall accrue on the outstanding balance of the Loan at an interest rate of **Six Percent (6.0%)**, calculated on an annual basis.

B. Upon occurrence of an Event of Default, interest shall accrue on the outstanding balance of the Loan at the default interest rate, which shall immediately and automatically increase to **Eighteen Percent (18%)**, compounded daily.

**COLLATERAL/ OTHER RIGHTS:** A. The outstanding balance of the Loan shall also include (i) all sums advanced as part of the Initial Advance and Subsequent Advances (up to the Maximum Loan Amount), (ii) all accrued interest, (iii) all Fees (defined below), (iv) all Expenses (defined below), (v) all other amounts

due in connection with the Loan. The outstanding balance due under the Loan shall be secured by valid, perfected and enforceable liens and security interests hereby granted by the Debtor: (i) in all of the estate's right, title and interest in real property existing on or after the Petition Date, at the address more commonly known as 4516 Seagull Drive, New Port Richey, FL 34652; (ii) any and all of Borrower's personal property including without limitation those identified in **Exhibit "A"** (all of the foregoing, collectively, the "Collateral"). Such liens and security interests in favor of Lender shall be a perfected senior lien in any such Collateral pursuant to 11 U.S.C. §364(c)(2) only to the extent there are no valid, perfected, enforceable, and unavoidable existing liens, mortgages or security interests encumbering such Senior Collateral.

B.     Except as provided in the foregoing paragraph, the Loan shall also be secured by a perfected junior lien and security interest in all the Borrower's other Collateral otherwise subject to an existing lien which is valid, perfected, enforceable, and unavoidable. Such liens in favor of Lender shall be junior to any and all other valid and perfected liens, mortgages, and security interests on such Collateral pursuant to 11 U.S.C. §364(c)(3).

C.     Upon the entry of a Final order approving the granting of the liens contemplated in the immediately preceding paragraphs in the Collateral, the Lender shall automatically obtain valid, enforceable, perfected, and unavoidable liens in the Collateral securing the Loan.

D.     In addition to the liens in favor of Lender described above, all amounts due pursuant to the Loan shall, pursuant to 11 U.S.C. § 364(c)(1) and 11 U.S.C. §507(b), be deemed a "super-priority" administrative expense claim with priority over any and all administrative expenses of the kind specified in 11 U.S.C. 503(b).

E.     Notwithstanding the foregoing, any and all liens, administrative expenses, and amounts due under the this Loan shall be subordinated to (1) unpaid fees due to the U.S. Trustee, (2) unpaid fees and costs due to the Borrower's bankruptcy counsel. Moreover, to the extent any such amounts have been paid from the Loan proceeds, such amounts shall not have "super-priority" or other administrative expense status as to that respective recipient, shall not be subject to liens in favor of the Lender, and shall not be subject to forfeiture or disgorgement to the Lender.

F.     The Lender's liens and security interests shall not be primed, surcharged, altered or impaired or otherwise adversely affected in any way. No claim or expense shall have priority over Lender's rights in the Collateral, except as specifically provided above. Except as

specifically provided herein, no administrative expense, and no claim allowed and payable under 11 U.S.C. §§ 330, 331, 503(b) 506(c), 507 or 726, shall have an interest in any asset of the Borrower which constitutes the Collateral that is superior in right or dignity over the claims of the Lender. The Final Order shall provide that immediately upon its entry the Lender's interest(s) in the Collateral shall be secured by valid, enforceable and perfected Liens and security interests as contemplated herein, and that no further actions or filings shall be required by the Borrower, Lender, Court, or any party to create or perfect such Liens. Notwithstanding the foregoing, the Lender may file or record such documents in the appropriate forum as it deems reasonably necessary to memorialize, create, and/or perfect its interests hereunder.

G.    The Final Order shall contain a finding by the Bankruptcy Court that the extending of credit and making of Loans by Lender hereunder to Borrower is in good faith and therefore, Lender shall be entitled to full protection of 11 U.S.C. §364(e), and that the Borrower provided proper notice of the Motion (defined below), the hearing(s) on the Motion, and has otherwise satisfied the applicable notice requirements set forth in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

**REPAYMENT**:    The Borrower shall not be required to make any repayments of the outstanding principal or Interest balance of the Loan until the Maturity Date, at which time all outstanding amounts under the Loan <u>shall become immediately due and payable</u>. Such amount shall be repaid either (1) in cash on the Maturity Date, (2) by the transfer of condominium units and/or amenities of the Seaview Project (as that term is used in the Motion seeking approval of this Commitment) free and clear of all encumbrances and having a value (assigned by the parties and/or appraised by the Bankruptcy Court) equal to the outstanding balance of the Loan, or (3) as otherwise agreed to by the Lender, in writing. Any payments of cash (except for the final payment hereunder) must be in a minimum amount of Two Thousand ($2,000.00) Dollars which will be credited first to Fees, Expenses and costs hereunder, then to accrued Interest, and finally to the outstanding principal balance of the Loan.

**PREPAYMENT**:    The Loan may be paid off at any time, in full or in part, without penalty, except there shall be no refund for the Fees, Expenses, or other costs paid pursuant to the terms hereof or in the Loan Documents.

**COVENANTS**:    In addition to standard covenants required by the Lender in loans such as this, the Lender will require that:

A.    The Borrower shall: (a) operate its business according to the Budget; (b) disburse funds for the payment of expenses only as set

forth in the Budget or as otherwise specifically approved by the Lender, in writing; (c) comply with all provisions of the Final Order, this Commitment and (if applicable) the Loan Documents, including the reporting requirements; and (e) notify Lender in writing of the occurrence of any Event of Default (defined below) and/or of any material adverse change that would affect the value of the Borrower's assets, or its financial condition.

B.      In addition to the other documents and information required under this Commitment, the Borrower shall supply to Lender: (a) on or before the twentieth (20th) day of each month during the term of the Loan, a cash flow statement relating to its operations and activities during the prior month; (b) within three (3) days after Borrower receives a copy of the same, copies of appraisals of any of the Borrower's assets; and (c) all information reasonably necessary for Lender to monitor its Loan to Borrower and the Borrower's operations. Notwithstanding the forgoing, while the Borrower is in its chapter 11 bankruptcy case, the Lender agrees to accept the Debtor-In-Possession Monthly Operating Reports, if timely filed, in lieu of items (a)-(c) of this paragraph.

So long as any portion of the Loan remains outstanding, the Borrower shall not seek or permit, and shall actively object to the request for entry of: (i) an order dismissing or converting its chapter 11 Case; (ii) any order transferring the venue of the Case from the Bankruptcy Court, or (iii) any order (other than the Final Order approving this Loan) which authorizes under any section of the Bankruptcy Code the granting of any lien or security interest in any Collateral in favor of any party other than Lender, or the obtaining of any credit or the incurring of any indebtedness that could constitute a claim is entitled to a status equal to or superior to that granted to Lender.

**DEFAULT/ REMEDIES:**      An "Event of Default" under the Loan shall be any situation, action, or inaction, which causes Lender, in its sole and absolute discretion, to determine that it is insecure with Borrower's ability to perform its obligations under the Loan, including, by way of example and not limitation:

(i)      the granting of stay relief to any creditor with respect to any assets constituting the Collateral for the Loan;

(ii)      the appointment of a chapter 11 trustee or examiner;

(iii)      the filing of a motion to dismiss or convert the bankruptcy cases;

(iv) the failure of Borrower to remit the required reporting;

(v) the misuse or misappropriation of the Loan proceeds;

(vi) the inability of Borrower to pay their post-petition expenses as they come due;

(vii) the sale of any of the Borrower's assets (outside the ordinary course of its business) which comprise the Collateral for the Loan, except as provided hereunder, or;

(viii) the failure of the Debtor to resolve its disputes with its primary secured lender within sixty (60) days of the Effective Date of this Loan (whether through consensual resolution or litigation) in a manner satisfactory to the Lender.

In addition to other rights and remedies available under applicable law, upon occurrence of an Event of Default:

(i) The entire amount of the Loan shall become immediately due and payable and the Lender shall have no obligation to make the Initial Advance or any Subsequent Advances, without further notice to any party.

(ii) Lender, if it seeks to exercise its rights and remedies under this Commitment with respect to the default, shall provide written notice (the "Written Notice") to the Borrower, the Borrower's counsel of record in the Case, and the United States Trustee, and shall file an affidavit with the Bankruptcy Court specifying the default. The Written Notice may be any written document providing notice of default, including but not limited to an affidavit filed with the Bankruptcy Court.

(iii) The Borrower shall have three (3) business days from the receipt of the Written Notice in which to cure the default or file a contravening affidavit with respect to the default.

(iv) If the default is not cured within the prescribed three (3) business day period, Lender may file an emergency motion for relief from the automatic stay, and the Borrower hereby consents to the Court setting an expedited hearing on forty-eight (48) hours notice to determine whether Lender shall be granted relief from the automatic stay to foreclose its liens on the Collateral, or take any

other action available to Lender under this Commitment, the other Loan Document, and/or applicable law.

The entire principal balance of the Loan, plus all accrued and unpaid interest, Fees, Expenses, and other costs contemplated herein, through the date of payment shall, in addition to the occurrence of any Event of Default as described above, automatically become due and payable upon: (i) the confirmation of any plan of reorganization in the Case; (ii) conversion of the Borrower's chapter 11 case to a case under Chapter 7; (iii) appointment of a chapter 11 trustee or examiner; (iv) dismissal of Borrower's bankruptcy Case; (v) entry of an order granting relief from stay to any party with regard to any property of the estate of Borrower; or (vi) entry of an order approving the transfer of any of the Collateral to a party other than Lender and other than in the ordinary course of business.

**COURT APPROVAL/**
**ACKNOWLEDGEMENTS/**
**WAIVERS:**

As material conditions precedent to extending the Loan, Lender shall require the Final Order (1) approve the terms of the Loan as set forth herein and in subsequent documentation memorializing the provisions of the Loan, and (2) the delivery of documents evidencing the Loan satisfactory to the Lender and, if applicable, Lender's counsel. The Lender may, in its sole and absolute discretion, waive the foregoing conditions of this DIP Loan.

**CONDITIONS:**

Lender's obligations to make each advance of the Loan shall be expressly subject to the following conditions precedent:

A. There shall exist no Event of Default or set of circumstances which, given the expiration of time or the giving of notice, would give rise to an event of default under the Loan Documents including, without limitation, failure to satisfy any of the financial covenants.

B. At all times during the Term of the Loan, Mr. Borda shall remain employed as President of the Borrower.

C. The Borrower shall provide the Lender (including its designated professionals) at all times reasonable access, right to inspection of the premises and its books and records upon request.

**FEES & COSTS:**

A. At the funding of the Initial Advance and with each Subsequent Advance, Borrower shall incur the obligation to pay: (a) all of Lender's costs and expenses related to the Loan or to the bankruptcy case (including Lender's travel and lodging expenses, if any) and out-of-pocket

expenses accrued as of the date of such advance (which shall automatically become part of the Loan); (b) all recording costs (including any recording fees, documentary stamp taxes, or intangible taxes) for filing the recordable Loan Documents; and (c) the cost associated with retaining any accountants in connection with the Bankruptcy Case, all of such costs under (a)-(c) being collectively referred to as the "Expenses."

B.     In addition, the Borrower shall pay to Lender the reasonable fees and expenses (including travel expenses, if any) of Lender's counsel, arising in connection with the Loan and the representation of Lender in the bankruptcy case (collectively, the "Fees"). The Fees shall be deemed a part of the Loan secured by the Collateral. The Fees (and related costs) of Lender's counsel shall be calculated on a time-spent basis, based upon the standard hourly rates of Lender's counsel generally charged to its clients for similar matters.

C.     Borrower agrees that the Loan is intended to and shall be without cost to Lender.  Borrower assumes liability for and will pay all Expenses, Fees, and other costs and expenditures required to satisfy the conditions hereof and the making of the Loan as provided hereunder (including the costs of any title policies and/or surveys).  Such costs and expenses shall be paid as provided hereunder, or upon demand if the Loan does not close or if this Commitment is terminated.

**ACCEPTANCE OF COMMITMENT:**

If the Loan is made hereunder by Lender and Borrower elects not to enter into the Loan under this Commitment, the Bankruptcy Court does not approve this Commitment, the Borrower fails to comply with conditions listed herein, and/or the Bankruptcy Court rules that financing must only be provided by an existing creditor or other third party lender in lieu of Lender, or this Commitment is altered, revised, or modified by the Bankruptcy Court (without the Lender's express written consent), then this Commitment shall be deemed null and void, except that all costs, Fees, and Expenses expended by the Lender and its attorneys shall be deemed to have been earned and are entitled to be treated as an administrative expense in the Case, subject to Bankruptcy Court approval.

This letter will become a binding Commitment once signed by all parties and approved by the Bankruptcy Court.  This offer by Lender will expire Wednesday, **March 30, 2011, at 5:00 PM EST,** time being of the essence.  Lender shall have no obligation with respect to the Loan unless and until this Commitment letter is fully executed and received by Lender and the other conditions set forth herein are timely satisfied.

The Loan Documents (if any) shall provide each party specific wire instructions and funding information as needed. Unless otherwise modified by the Lender in writing, the Borrower shall forward the Fees and Expenses due hereunder to Lender in accordance with this Commitment, as follows:

**Wire instructions for Amounts Paid to Lender:**

_____
Attn: _____.
Amount: $_____
Bank _____
ABA# (contact _____ for ABA #_____)
Acct# (contact _____ for Acct #_____)
Special Instructions: Contact _____ upon receipt – (___) _____

**CLOSING**: The Closing on the Loan shall take place as soon as practical after satisfaction of the conditions contained herein including, without limitation, approval of the Bankruptcy Court. Each successive advance on the Loan shall take place upon satisfaction of the conditions contained herein without the need for an Order of the Court except as specifically contemplated herein.

**ASSIGNMENT:** Lender may freely assign all or any part of its obligations and rights hereunder to one or more assignees or participants, and may collaterally assign the Loan Documents to Lender's lender(s) under any existing or future loan arrangement. Lender may bring participants into this transaction either as assignees or indirectly as lenders to Lender. Borrower consents to Lender's sale or assignment of all or a portion of the Loan, and Borrower agrees to execute any and all agreements and other documents reasonably requested by Lender and Lender's lenders to formalize such assignments of or participations in the Loan.

**USURY:** This Commitment is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest at a rate which could subject Lender or its assignees to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this Commitment or the Note, the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest hereunder and/or under the Note shall be deemed to be immediately reduced to such maximum rate, and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied, and shall be deemed to have been payments in reduction of principal balance or, if the Loan has not closed shall be void, and if Lender deems it a hardship to

close the Loan under usury statutes, all fees paid to Lender shall be refunded and this Commitment shall be null and void.

**CONFIDENTIALITY:**

This Commitment is confidential until such time as the Commitment has been executed by each of the Borrower and the Lender. The Borrower shall not disclose the terms of this Commitment to any third party other than its officers, directors, professionals and advisors, and the unsecured creditors committee (if any), unless otherwise agreed by the Lender (in writing) or required in connection with the Bankruptcy Case pursuant to a court order following a hearing for which notice has been provided to the Lender. This provision shall survive any termination of this Commitment.

**SURVIVAL OF COMMITMENT:**

Unless otherwise waived by the Lender, a copy of this Commitment shall be attached to, and incorporated into, each and every order entered by the Bankruptcy Court with regard to the Loan. To the extent not inconsistent with the other Loan Documents (if any), this Commitment, and all of the terms and conditions contained herein shall survive the closing of the Loan and shall remain binding on the Borrower and Lender as part of the Loan Documents, provided, however, that if there should exist any disagreement between the terms of this Commitment and the terms of any other Loan Documents, the terms of any such Loan Documents shall control.

**OTHER:**

This Commitment may be executed in counterparts which, taken together, shall constitute one original. Facsimile or copies of this Commitment shall for all purposes be deemed originals. This Commitment is for the benefit of the Borrower only and may not be assigned except upon the prior written consent of Lender, which consent may be withheld for any reason or no reason. No party other than the Borrower or a permitted assignee may rely upon the terms and conditions of this Commitment. This Commitment is executed by an individual strictly in his capacity as a representative of the Lender. By acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee, or agent of the Lender shall be personally liable for the payment of any claim or performance of any obligations hereunder. This Commitment will be governed by and construed in accordance with the laws of the State of Florida without regard to the principles of conflicts of laws thereof. **The Borrower had the benefit of advice of legal counsel in connection with the execution of this Commitment and the Loan contemplated hereby or, having been given an opportunity to do so, has elected not to consult legal counsel. This document has been negotiated at arm's length and in good faith between the Lender and the Borrower.**

**NO WAIVER:**          No failure or delay on the part of Lender to exercise any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. No advance of funds under the Loan shall obligate the Lender to make any Subsequent Advances. By electing to make an advance of Loan proceeds, the Lender does not waive or release its rights under the Loan Documents to enforce the same against the Borrower as provided herein. Each and every right or remedy granted under the Loan Documents or under any document delivered thereunder or in connection therewith or allowed to Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

As referenced in this Commitment, funding of the Loan is dependent upon, among other things, satisfactory negotiation of loan documentation between the Borrower and the Lender (if the Lender so requires in its sole and absolute discretion). Upon such a request (which the Lender can make at any time before Closing) (i) the foregoing letter will be deemed to simply set forth general terms and conditions upon which the Lender would be willing to make the Loan described herein and (ii) this Commitment will not be, in and of itself, a document that guarantees funding by the Lender to the Borrower in the amounts set forth herein, and (iii) only final loan documentation and satisfaction of the conditions set forth above will obligate the Lender to fund the Loan. Any material adverse change of the financial condition of the Borrower or the condition of the Collateral between the execution of this Commitment and the closing of the Loan will relieve the Lender of any obligation to fund the Loan.

[INTENTIONALLY LEFT BLANK]

If you find this Commitment to your satisfaction, please execute a copy of this document in the space provided herein below and return the same to the undersigned and its counsel.

Very truly yours,

**GULF LANDINGS LOAN, LLC**
a Florida limited liability company

By: _____

Its: _____

Date: _____

**AGREED, ACKNOWLEDGED, AND ACCEPTED:**

_____.

By: _____

    Joseph Borda

    President

Date: _____

### Exhibit A To Commitment Letter

The Borrower grants the Lender an unconditional and continuing security interest to any and all of the Borrower's right, title and interest in and to all of the Borrower's assets, including, but not limited to, all of the Borrower's accounts, general intangibles (including payment intangibles), rents, maintenance fees, goods, inventory, equipment, fixtures, instruments (including promissory notes), documents, chattel paper, deposit accounts, investment property, letter of credit rights, commercial tort claims, supporting obligations, patents and patent applications, trademarks, service marks, copyrights, trade names, other intellectual property, and all cash and non-cash products and proceeds thereof (including, without limitation, insurance proceeds, rents, and maintenance fees), in each case whether now owned or existing or hereafter created, acquired or arising and wherever located.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                    Chapter 11

SEAVIEW PLACE DEVELOPERS, INC.

                                    Case No: 8:11-bk-5126-KRM

                Debtor.

_____/

## INTERIM ORDER AUTHORIZING DEBTOR
## TO OBTAIN POST-PETITION FINANCING

**THIS CASE** came before the court for preliminary hearing on March __, 2011 at

_____ __.m. (the "**Preliminary Hearing**") to consider the *Debtor's Emergency Motion*

*for Authority to Obtain Post-Petition Financing* (Doc. No. __) (the "**Motion**") filed by

Seaview Place Developers, Inc. (the "**Debtor**").  Through the Motion, the Debtor seeks

the entry of preliminary and final orders pursuant to Section 364 of the Bankruptcy Code,

authorizing the Debtor to (a) ultimately borrow up to Three Hundred Thousand Dollars

($300,000.00) (the "**DIP Loan**") on a post-petition basis from Gulf Landings Loan, LLC

(the "**Lender**") and (b) obtain an immediate interim advance under the DIP Loan in the

amount of $50,000.00 (the "**Interim Advance**") in order to avoid immediate and

irreparable harm to the Debtor, its estate and its creditors.

Appearances were made as reflected on the record.  The Court, having considered

the Motion, the arguments and proffers of counsel, and for the reasons stated orally and

recorded in open court that shall constitute this Court's decision, finds it appropriate to

grant the Motion on a preliminary interim basis, to the extent set forth below and to

schedule a final hearing (the "**Final Hearing**") to consider final approval of the Motion. Accordingly, it is

**ORDERED**:

1.　　The Motion is **GRANTED** on a preliminary basis, as set forth below.

2.　　The Debtor is authorized to obtain the DIP Loan from the Lender, up to the amount of the Interim Advance, to the extent necessary to supplement the Debtor's existing cash and cash generated from the Debtor's operations to pay those operating expenses set forth on the budget attached as an exhibit to the Motion (the "**Budget**").

3.　　Pursuant to <u>Fed.R.Bankr.P.</u> 4001(c)(2), the Court specifically finds that the obtaining of credit to the extent authorized by this Order, is necessary to avoid immediate and irreparable harm to the estate pending a final hearing on the Motion.

4.　　All amounts advanced pursuant to this Order shall be (i) secured by senior liens on assets of the Debtor not already encumbered by valid, perfected, and unavoidable liens pursuant to 11 U.S.C. § 364(c)(2), (ii) secured by junior liens on assets of the Debtor that are already encumbered by valid, perfected, and unavoidable liens pursuant to 11 U.S.C. § 364(c)(3), and (iii) allowed as "super-priority" administrative expenses pursuant to Section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code; provided, however, that the liens and administrative expense claims of the DIP Lender shall be subject to a "carve-out" for professional fees of Debtor's counsel and fees of the United States Trustee as provided in the Motion.

5.       A hearing to consider final approval of the Motion shall be scheduled for

_____, 2011 at _____ __.m., Courtroom ___, Sam M. Gibbons United States

Courthouse, 801 N. Florida Avenue, Tampa, Florida, by separate Order.

DONE and ORDERED in Tampa, Florida on _____.


_____
K. Rodney May
United States Bankruptcy Judge

Copies furnished to:

**Suzy Tate**, Jennis & Bowen, P.L., 400 N. Ashley Drive, Suite 2540, Tampa, FL 33602
**Keith Fendrick**, Holland & Knight, 100 N. Tampa Street, Suite 4100, Tampa, FL 33602
**United States Trustee**, 501 E. Polk St., Suite 1200, Tampa, FL 33602
**LBR 1007-2 Parties in Interest**