UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:	Chapter 11

SEAVIEW PLACE DEVELOPERS, INC.	Case No. 8:11-bk-05126-KRM [Lead Case]

GULF LANDINGS DEVELOPMENT CORPORATION,	Case No. 8:11-bk-13101-KRM

HARBOR COLONY DEVELOPMENT INC.	Case No. 8:11-bk-13103-KRM

Debtors.	(Jointly Administered Cases)
_____/

**GULF LANDINGS DEVELOPMENT CORP. AND HARBOR COLONY DEVELOPMENT, INC.'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING (EMERGENCY HEARING REQUESTED)**

**SUMMARY OF RELIEF REQUESTED**

The Debtors seek authority to borrow from a related entity $4,000.00 on an emergency interim basis, and borrow a cumulative amount of up to $20,000.00 following final court approval. These amounts are needed to fund insurance costs for Gulf and Harbor's properties, expenses, and costs of administration in these Chapter 11 cases, all in accordance with the proposed budget attached hereto. This Motion requests the amounts loaned hereunder be granted "super-priority" administrative expense status as described herein, and also be secured by certain liens in these Debtors' assets. The proposed liens would be senior liens on all of these Debtors' unencumbered property, and junior liens on all of the Debtors' property already encumbered by existing, valid, and unavoidable liens. The Motion seeks to have the liens granted in connection with any financing approved by this Court to be deemed valid and perfected without the need for any further filings or action by any party.

Gulf Landings Development Corporation ("Gulf") and Harbor Colony Development Inc. ("Harbor," together, the "Debtors"), by proposed counsel and pursuant to 11 U.S.C. §364 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001(c) and this Court's Administrative Order FLMB-2009-1, hereby move this Court for the entry of preliminary and final orders authorizing the Debtors to ultimately borrow up to Twenty Thousand Dollars ($20,000.00) through a secured line of credit as described below (the "DIP Loan") from Gulf Landings Loan, LLC (the "DIP Lender").

The DIP Loan shall be used to fund insurance payments, expenses, and administrative costs that are projected to occur during the pendency of the Debtors' bankruptcy case. As grounds in support, the Debtors state:

**Jurisdiction and Venue**

1. On July 8, 2011, Gulf and Harbor each filed their Voluntary Petitions for Relief under chapter 11 of the Bankruptcy Code.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

4. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).

**Relief Requested**

A. **Background**

5. On March 22, 2011, an affiliate of the Debtors, Seaview Place Developers, Inc. ("Seaview"), filed a Voluntary Petition under chapter 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code") with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

6. The Debtors and Seaview are owned by J&M Development Concepts LLC (the "Parent Company").

7. Seaview developed, built, owns, and now manages a nine-story,

waterfront high-rise condominium (the "Seaview Building") in Pasco County, Florida commonly known as Seaview Place. The Seaview Building was constructed in 2007-2008 and funded in part by a construction loan in the original amount of approximately $22 Million from Colonial Bank ("Colonial"). The outstanding balance on the loan (the "Seaview Loan") is $14,770,144.00, and Seaview estimates that the value of its interest in the Seaview Building is $24,750,000.

      8.      Gulf owns the following properties in Pasco and Pinellas Counties:

- Tract 40-A ("40-A") and Tract 40-B ("40-B"), which are apparently encumbered by mortgages in favor of BB&T securing loans totaling approximately $6,640,000 (together, the "Gulf Loan"). These properties are adjacent to Seaview Place and have valuable entitlements and vesting, which enables the land to be developed for multi-family and single-family residential units. 40-B also includes a dock with 42 boat slips. According to an appraisal commissioned by BB&T in 2010, the estimated total market value (bulk or discounted) of the fee simple interest in these properties as of March 25, 2011 is $6,750,000 (with $1,080,000 of value attributed to 40-A and $5,670,000 attributed to 40-B).

- A single-family lot located at 470 Poinsetta in Bellair, Florida (the "Bellair"), which is encumbered by a mortgage held by BB&T securing a loan with an estimated balance of $280,550.63. Gulf estimates the value of the property to be $365,000.00.

- Tract Comm 3 is vacant land zoned for Commercial 3 development. Gulf values the property at $210,000. This parcel is encumbered by a mortgage that was originated with Cortez Community Bank, which is now allegedly held by Premier American Bank ("Premier")[1] and secures a loan having a balance of roughly $138,590.73. Tract Comm 3 appears to serve as additional collateral for another loan that Cortez made to Debtors' Affiliate Dockside at Gulf Landings, Inc. ("Dockside"), which apparently has an estimated balance of $295,919.37 (the "Dockside Loan"). The primary collateral for the Dockside Loan is land and a dock facility with 21 unsold wet slips, which is valued at approximately $305,000 (the "Dockside Property"). Based on these values, the various loans that are now apparently held by Premier, in the total amount of $434,510.10, appear to be secured by property with a total estimated value of $515,000.

---

[1] Premier seems to have acquired this loan and mortgage from the FDIC when Cortez Community Bank recently failed but, again, the Debtors have not independently verified the nature and extent of Premier's alleged acquisition of Cortez's loan(s).

- Govt. Lot 1 is a small unencumbered lot that Gulf believes has inconsequential value as evidenced by the tax assessor's appraised value of $694.

9. Harbor owns real property known as Tract 50-C in Pasco County, which is a vacant lot valued at $1,085,000, and appears to be additional collateral for the Gulf Loan and Seaview Loan, pursuant to the Cross Default/Cross Collateralization Agreement (the "Cross Collateralization Agreement") between Seaview, Gulf, Harbor, and BB&T executed in 2009.

10. The Cross Collateralization Agreement provides that all of Seaview's property would serve as additional collateral for the Gulf Loan, certain of Gulf's Property (40-A and 40-B) would serve as additional collateral for the Seaview Loan, and all of Harbor's property would serve as additional collateral for both the Seaview Loan and the Gulf Loan. Essentially, BB&T has cumulative claims against the Debtors totaling about $21,690,694[2], which appear to be secured by certain of the Debtors and Seaview's real property having an estimated total value of $32,585,000.

11. Because Gulf and Harbor's properties consist of vacant lots, their operating expenses are minimal. Historically, the Debtors' affiliates have provided loans to the Debtors to fund these expenses and insurance.

B. **Status of Debtors' Bankruptcy Cases**

12. On July 19, 2011, the Bankruptcy Court entered its *Order Granting Debtors' Motions for Joint Administration of Affiliated Cases* (Doc. No. 85).

13. While it is early in the Gulf and Harbor's bankruptcy cases, they have already filed a joint plan of reorganization and disclosure statement with Seaview, which

---

[2] This amount includes the Bellair loan; however, Bellair appears to be excluded from the Cross Collateralization Agreement.

contemplates the substantive consolidation of all three Debtors for voting on the plan and distributions under the plan.

### C. Necessity of DIP Loan

14. The Debtors will require funding primarily to fund post-petition insurance, operational expenses, and expenses related to the administration of the estates.

15. Based on current projections, the Debtors anticipate that they will require up to Twenty Thousand Dollars ($20,000.00) through the end of the bankruptcy cases. The Debtors have prepared a Budget attached as **Exhibit "A"** reflecting the Debtors' anticipated average monthly cash needs (the "Budget"). Additionally, a down payment of $1,962.00 will soon be due on an insurance premium financing agreement, which the Debtors have filed a motion for authorization to enter into.

16. As such, the Debtors estimate they will require approximately Four Thousand Dollars ($4,000.00) of the funds by August 26, 2011,[3] in order to fund their post-petition expenses on an interim basis.

17. If the Debtors are not allowed to borrow the funds, the Debtors will suffer immediate and irreparable harm. Specifically, in that instance, the Debtors would be unable to obtain insurance or pay expenses thereby jeopardizing the estates to the detriment of their creditors and other stakeholders.

### D. Identity of Proposed DIP Lender

18. The DIP Lender[4] is a newly formed Florida limited liability company that is related to the Debtors and Seaview. Although arguably not an "affiliate" or "insider"

---

[3] This is the date the insurance payments begin.
[4] The Bankruptcy Court had previously entered a *Final Order Authorizing Debtor to Obtain Post-Petition Financing* (Doc. No. 51) authorizing Seaview to obtain up to $300,000 from the same DIP Lender. The relief requested in this motion is not related to Seaview's request.

of the Debtors (as those terms are defined in the Bankruptcy Code), the DIP Lender is essentially indirectly owned and controlled by the principals of the Debtors and Seaview. The DIP Lender shall be capitalized primarily through deposits of proceeds borrowed against Joseph Borda's "universal life" policy with Prudential Financial, Inc. (the "Life Insurance Policy").[5] Correspondence evidencing the funding source of the DIP Lender is attached as **Exhibit "B."** As revealed by that correspondence there are material costs associated with the Principals' borrowing against the Life Insurance Policy (primarily in the form of interest and other fees) that must ultimately be repaid to the Life Insurance Policy (in addition to the principal amount borrowed).

### E. Terms of the DIP Loan

19. The DIP Loan shall be memorialized by a commitment letter with the following proposed terms:

(i) *Amount of DIP Loan* - The DIP Loan shall be structured as a line of credit and shall be in the maximum outstanding amount of **Twenty Thousand Dollars ($20,000.00)**. Proceeds of the DIP Loan shall be advanced to the Debtors Gulf Landings Development Corporation and Harbor Colony Development Inc. (together, the "Borrowers") as follows: (i) upon this Court's entry of an Interim Order authorizing the DIP Loan and the DIP Lender's approval, the DIP Lender will make available one or more initial installments of an initial advance, up to a total **Four Thousand Dollars ($4,000.00)** (the "Interim Advance") to the extent needed for the payment of their reasonable and necessary operations for the first month following the Petition Date, in accordance with the Budget, and thereafter (ii) upon the Court's final approval of the Motion, the Borrowers' request(s) and the DIP Lender's consent in each such instance, the DIP Lender may make one or more subsequent advances of the balance of the DIP Loan to the Borrowers (each a "Subsequent Advance") for the purposes described in the Budget. To the extent any portion of the outstanding amount of the DIP Loan is repaid during the term of the DIP Loan, such amounts can be re-advanced to the Debtors subject to the terms of this Motion up to the maximum authorized amount of the DIP Loan. Reasonable Fees and Expenses of the DIP Lender incurred in connection

---

[5] On prior occasions, the Principals and affiliates have similarly funded loans to the Debtors' expenses through borrowing against the Life Insurance Policy, albeit not through the recently created DIP Lender.

with making the DIP Loan (as described below) shall be considered part of the principal amount of the DIP Loan.

(ii) *Interest Rate* **-** The rate of interest shall be at **six percent (6%) per annum,** which shall accrue on the outstanding balance of the DIP Loan from the date of each advance until all outstanding amounts are repaid in full.

(iii) *Term and Termination* - The term of the DIP Loan shall be for **six (6) months** from the date of the Interim Advance (the "Term") (unless sooner terminated and/or replaced with substitute funding upon confirmation of the plan or otherwise, extended by written agreement of the parties, or upon the occurrence of an Event of Default, as defined below). The Debtors may (but are not required to) repay the principal, interest, and other amounts due under the DIP Loan at any time prior to the end of the Term without penalty. At the end of the Term, all amounts then outstanding under the DIP Loan will be paid immediately through a payment of the outstanding balance of the Loan in cash or as the Debtors and DIP Lender may otherwise agree, in writing.

(iv) *Events of Default* – The Debtors' failure to fully and timely pay all amounts due under the DIP Loan at the expiration of the Term (a "Payment Default"), the dismissal or conversion of the bankruptcy cases, the appointment of a Chapter 11 trustee or examiner, and/or the granting of relief from the automatic stay for BB&T shall each constitute an "Event of Default," upon which the full outstanding balance of the DIP Loan shall be immediately due and payable. In the event of a Payment Default only, the DIP Lender shall provide the Debtors with a written notice of such Payment Default for failure to fully and timely make payments due under the DIP Loan, and the Debtors shall have three (3) business days therefrom to cure such Payment Default. If an Event of Default occurs (and, in the event a Payment Default is not timely cured after Notice to the Debtors as described above), then all amounts due under the DIP Loan shall become immediately due and payable without further notice or action by the DIP Lender and/or Debtors.

(v) *Liens* **-** The amounts due and the Debtors' obligations to the DIP Lender under the terms of the DIP Loan shall be secured by a valid and perfected first lien on all unencumbered assets of the Debtors, and a valid and perfected junior lien on all assets of the Debtors already encumbered by valid, perfected, and unavoidable pre-petition liens pursuant to 11 U.S.C. § 364 (c)(2) and (3).

(vi) *Administrative Expense Status* **–** As further assurance of repayment, the Debtors' obligations under the terms of the DIP Loan shall be afforded "super-priority" administrative expense status in the Debtors' chapter 11

case as provided in 11 U.S.C. § 364(c)(1), with priority over any and all other administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) and 507 (b).

(vii) **_Carve-Out_** – A "carve-out" from the requested liens and administrative expense claims is contemplated such that amounts due to the DIP Lender under the DIP Loan are subordinate to the fees and costs of the Debtors' Chapter 11 bankruptcy counsel and U.S. Trustee Fees owed by the Debtors. Any such amounts paid from proceeds of the DIP Loan shall not be subject to disgorgement in favor of the DIP Lender.

20. The terms of the proposed DIP Loan may, but need not be, memorialized by further or additional documents, as the DIP Lender may reasonably request. The Debtors request that the liens contemplated above be immediately effective upon the making of the Interim Advance and each Subsequent Advance, without the need for further action, filing, or recording of any instrument by any party. Likewise, the Debtors request allowance of the requested administrative expense status for all amounts under the DIP Loan without further documentation, application, or other acts by the Debtors, DIP Lender, or Bankruptcy Court.

## Basis for Relief

21. The compelling circumstances set forth above warrant the approval of the DIP Loan as proposed by this Motion under Section 364 of the Bankruptcy Code and Fed.R.Bankr.P. 4001.

22. The Debtors are presently unable to obtain, on a post-petition basis, (i) unsecured credit, (ii) credit simply deemed an allowable administrative expense or, (iii) credit on any basis other than that described in this Motion. As such, the assurances of repayment under the DIP Loan as requested in this Motion are justified pursuant to Section 364(c)(1), (2), and (3).

23. The DIP Lender is unwilling to advance the DIP Loan without the

{00160235.DOC;1}

Page 8 of 11

protections summarized above, especially in light of the DIP Lender's obligations to ensure that it can recover funds sufficient to ultimately repay amounts borrowed against the Life Insurance Policy, plus the costs associated therewith.

24. The Debtors have contacted various third party lenders in unsuccessful attempts to procure similar post-petition financing on more favorable terms. In light of the circumstances, including the current economic climate, the Debtors do not believe any other lenders are willing to make a post-petition loan to the Debtors on terms more favorable than those of the DIP Loan.

25. The Debtors submit that the terms and conditions of the DIP Loan (which are largely necessitated by the terms of the loan from Life Insurance Policy) are fair and reasonable, necessary to the Debtors' reorganization efforts, are being extended in good faith, and are supported by reasonably equivalent value. As such, the Debtors request that the Court find that any credit extended under the DIP Loan is entitled to the protections of Section 364(e) of the Bankruptcy Code.

26. Good cause has been shown for the entry of an order granting this Motion pursuant to Bankruptcy Rule 4001(c). In particular, entry of the order is in the best interest of the Debtors' estate, their creditors and stakeholders, and necessary to their ability to reorganize.

**Basis and Necessity for Emergency Relief**

27. The Debtors request a preliminary hearing (the "Preliminary Hearing") on this Motion as soon as possible following the filing of the Motion to consider the entry of an order authorizing the interim advance substantially similar to the form of order attached as **Exhibit "C."** The Debtors require immediate funding of the Interim Advance

to pay anticipated post-petition expenses and insurance. Without immediate authorization to incur the Interim Advance, the Debtors will not be able to meet all of these post-petition operating obligations nor maintain the assets of the Debtor. The Interim Advance shall be used to the extent needed through the date of any such Final Hearing, all in accordance with the Budget. As such, immediate approval of the Interim Advance is needed to avoid the aforementioned immediate and irreparable harm to the Debtors, their estates, and creditors.

28. The Debtors suggest that at the Preliminary Hearing, the Court also schedule a subsequent final hearing to consider authorizing the Debtors to incur up to the balance of the DIP Loan pursuant to this Motion (the "Final Hearing") in compliance with Fed.R.Bankr.P. 4001(c). After the Final Hearing, if this Court enters a final order approving the DIP Loan in accordance with the terms set forth in this Motion, the DIP Lender will make the Subsequent Advances to the Debtors on an "as needed" basis for the purposes described herein, and pursuant to the terms and conditions described in the DIP Loan Commitment.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) schedule a Preliminary Hearing on an emergency basis to consider this Motion and thereupon enter an order authorizing Interim Advance as set forth in this Motion, (b) schedule a Final Hearing at the first available opportunity (after providing adequate and timely notice to all parties in interest) to consider this Motion and the entry of an order authorizing the

subsequent advances on the DIP Loan, subject to the terms and conditions set forth in this Motion, and (c) for such other and further relief as is just and equitable.

DATED this 2nd day of August, 2011.

Respectfully submitted,

/s/ *Suzy Tate*
Chad S. Bowen
Florida Bar No. 0138290
Suzy Tate
Florida Bar No. 22071
**Jennis & Bowen, P.L.**
400 North Ashley Drive, Suite 2540
Tampa, FL 33602.
Telephone: (813) 229-1700
Facsimile: (813) 229-1707 (fax)
E-mail: state@jennisbowen.com
Counsel for the Debtors

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. mail, postage prepaid or CM/ECF electronic service to the **United States Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; **Keith Fendrick**, Holland & Knight, 100 N. Tampa Street, Suite 4100, Tampa, FL 33602; **John A. Anthony**, Anthony & Partners, LLC, 201 N. Franklin St., Suite 2800, Tampa, FL 33602-5816; **Jack Hillstrom,** President and CEO, Premier Bank Minnesota, 500 West 98th St., Bloomington, MN 55420; those parties in interest listed on the attached **L.B.R. 1007-2 List**; and to those parties receiving electronic notices via CM/ECF, on this 2nd day of August, 2011.

*/s/ Suzy Tate*
Suzy Tate

```
Label Matrix for local noticing          A Little Off the Top                     A.S.K. Janitorial
113A-8                                   5737 Rowan Road                          Professionals, Inc.
Case 8:11-bk-05126-KRM                   New Port Richey, FL 34653-4549           4116 Lamson Avenue
Middle District of Florida                                                        Spring Hill, FL 34608-3744
Tampa
Tue Aug  2 13:09:20 EDT 2011

Adair Executive Services,Inc             Bernie J. Egan, Jr., CPA                 Blue Cross Blue Shield
9015 Ruger Drive                         6 White Horse Pike                       Po Box 105358
New Port Richey, FL 34655-1218           Haddon Heights, NJ 08035-1246            Atlanta GA 30348-5358



Branch Bank & Trust Co.                  Bright House Networks                    Charles Buono
c/o W. Keith Fendrick, Esq.              PO Box 30765                             10 Inverness Drive
Holland & Knight LLP                     Tampa, FL 33630-3765                     Medford, NJ 08055-4030
100 N. Tampa St., Ste. 4100
Tampa, FL 33602-3644


City of Clearwater                       Cortez Community Bank                    Dart Electronics
PO Box 30020                             nka Florida Community Bank               PO Box 40696
Tampa, FL 33630-3020                     1000 S Broad Street                      Saint Petersburg, FL 33743-0696
                                         Brooksville FL 34601-3117



Dave Spehar Lawn Service                 Denise E Barnett                         First Insurance Funding
3601 Cantrell Street                     United States Trustee                    PO Box 66468
New Port Richey FL 34652-6218            501 East Polk Street                     Chicago, IL 60666-0468
                                         Suite 1200
                                         Tampa FL 33602-3945


Florida Government Utility Authority     Jacob David Varn, Esquire                M.Wolf & A. Quintan
PO Box 151089                            Fowler White Boggs PA                    1504 Bay Road, #825
Cape Coral, FL 33915-1089                101 N. Monroe Street                     Miami Beach, FL 33139-3271
                                         Suite 1090
                                         Tallahassee, FL 32301-1570


Otis Elevator Company                    Premier American Bank, N.A.              Progress Energy Florida, Inc
One Farm Springs                         c/o John Anthony, Esquire                PO Box 33199
Farmington, CT 06032-2572                Anthony & Partners                       Saint Petersburg, FL 33733-8199
                                         201 N. Franklin Street, Suite 2800
                                         Tampa, Florida 33602-5816


Seaview Sunsets, LLC                     Shane Edrington                          Sprint
PO Box 2074                              12755 N 95th Place                       Po Box 660075
Palm Harbor, FL 34682-2074               Scottsdale AZ 85260-4591                 Dallas TX 75266-0075



St. Petersburg Times                     Staples Credit                           USAA
PO Box 112                               PO Box 689020                            10750 McDermott Highway
Saint Petersburg, FL 33731-0112          Des Moines IA 50368-9020                 San Antonio, TX 78288-1600



Verizon                                  Victor William Holcomb, Esq.             West Coast Copies
P.O. Box 920041                          Holcomb & Associates                     11533 US Highway 19 N
Dallas, TX 75392-0041                    3203 W. Cypress Street                   Clearwater FL 33764-7401
                                         Tampa, FL 33607-5109
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Branch Bank & Trust Company          End of Label Matrix
c/o W. Keith Fendrick, Esq.             Mailable recipients    29
Holland & Knight LLP                    Bypassed recipients     1
100 N. Tampa St., Ste. 4100             Total                  30
Tampa, FL 33602-3644
```

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:11-bk-13101-KRM<br>Middle District of Florida<br>Tampa<br>Tue Aug  2 13:40:48 EDT 2011 | Bernie J. Egan, Jr., CPA<br>6 White Horse Pike<br>Haddon Heights, NJ 08035-1246 | Blue Cross Blue Shield<br>PO Box 105358<br>Atlanta, GA 30348-5358 |
| Branch Banking and Trust Co.<br>5130 Parkway Plaza Boulevard<br>Charlotte, NC 28217-1964 | Cortez Community Bank<br>n/k/a Florida Community Bank<br>1000 S. Broad Street<br>Brooksville, FL 34601-3117 | Jacob David Varn, Esquire<br>Fowler White Boggs, PA<br>101 N. Monroe Street<br>Suite 1090<br>Tallahassee, FL 32301-1570 |
| Premier American Bank, N.A.<br>c/o John Anthony, Esquire<br>Anthony & Partners<br>201 N. Franklin Street, Ste. 2800<br>Tampa, FL 33602-5816 | Progress Energy Florida<br>PO Box 33199<br>Saint Petersburg, FL 33733-8199 | Sprint<br>PO Box 660075<br>Dallas, TX 75266-0075 |
| Staples Credit<br>PO Box 689020<br>Des Moines, IA 50368-9020 | USAA<br>10750 McDermott Highway<br>San Antonio, TX 78288-1600 | Verizon<br>P.O. Box 920041<br>Dallas, TX 75392-0041 |
| West Coast Copies<br>11533 US Highway 19 N.<br>Clearwater, FL 33764-7401 | End of Label Matrix<br>Mailable recipients    12<br>Bypassed recipients     0<br>Total                  12 | |

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:11-bk-13103-KRM<br>Middle District of Florida<br>Tampa<br>Tue Aug  2 13:42:25 EDT 2011 | A Little Off the Top<br>5737 Rowan Road<br>New Port Richey, FL 34653-4549 | Bernie J. Eagan, Jr., CPA<br>6 White Horse Pike<br>Haddon Heights, NJ 08035-1246 |
| Branch Banking and Trust Co.<br>5130 Parkway Plaza Boulevard<br>Charlotte, NC 28217-1964 | Dave Spehar Lawn Service<br>3601 Cantrell Street<br>New Port Richey, FL 34652-6218 | Florida Government Utility<br>Authority (FUGA)<br>PO Box 151089<br>Cape Coral, FL 33915-1089 |
| Jacob David Varn, Esquire<br>Fowler White Boggs Law Firm<br>101 N. Monroe Street<br>Suite 1090<br>Tallahassee, FL 32301-1547 | Pasco County Tax Collector<br>Mike Olson<br>P.O. Box 276<br>Dade City, FL 33526-0276 | Premier Amercian Bank, N.A<br>c/o John Anthony, Esquire<br>Anthony & Partners<br>201 N. Franklin Street, Ste. 2800<br>Tampa, FL 33602-5816 |
| Progress Energy<br>PO Box 33199<br>Saint Petersburg, FL 33733-8199 | Verizon<br>P.O. Box 920041<br>Dallas, TX 75392-0041 | Victor William Holcomb, Esq.<br>Holcomb & Associates<br>3203 W. Cypress Street<br>Tampa, FL 33607-5109 |

End of Label Matrix
Mailable recipients    11
Bypassed recipients     0
Total                  11